United States Court of Appeals
For the Eighth Circuit
_____

No. 20-2529
_____

Artemio Garcia-Pascual

*Petitioner*

v.

Merrick B. Garland, Attorney General of United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: June 23, 2022
Filed: March 14, 2023
_____

Before SMITH, Chief Judge, ARNOLD and STRAS, Circuit Judges.
_____

SMITH, Chief Judge.

   Artemio Garcia-Pascual, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals (BIA) affirming the denial of Garcia-Pascual's application for cancellation of removal. For the following reasons, we dismiss the petition for lack of jurisdiction.

Appellate Case: 20-2529     Page: 1     Date Filed: 03/14/2023 Entry ID: 5254658

## I. *Background*

Garcia-Pascual entered the United States without inspection near El Paso, Texas, on February 20, 2005.

On March 10, 2015, the Department of Homeland Security (DHS) served Garcia-Pascual with a Notice to Appear (NTA), charging him with removability under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(6)(A)(i). On November 3, 2016, Garcia-Pascual admitted the allegations in the NTA, conceded removability, and designated Mexico as the country of removal. On January 27, 2017, he filed an application for cancellation of removal under Section 240A(b)(1) of the INA based on the hardship that his United States citizen son, Saul, would face. *See* 8 U.S.C. § 1229b(b)(1). In the application, he indicated that he was not married and that Saul would not accompany him to Mexico if he were ordered removed.

On March 22, 2018, Garcia-Pascual submitted an addendum to his application for cancellation of removal. The addendum provided that Garcia-Pascual had married his longterm partner, Silva Vazquez-Cayetano (Vazquez), a native and citizen of Mexico, on March 20, 2018. Vazquez had an 11-year-old son, Bryan. The addendum claimed that both Garcia-Pascual's stepson Bryan and son Saul were qualifying relatives. Garcia-Pascual also submitted the following: (1) a copy of Saul's and Bryan's birth certificates; (2) evidence that Saul and Bryan had no educational or medical problems; (3) a letter from Garcia-Pascual's wife indicating that Bryan considers Garcia-Pascual his father, that the family is happy, and that the children are good students; (4) a letter from Bryan demonstrating that Garcia-Pascual has a close and loving relationship with his children and provides for them financially; and (5) letters from the children's school indicating that Bryan was excelling in school but did not read or write in Spanish, that the children had excellent attendance, and that Vazquez was involved with the school.

Appellate Case: 20-2529    Page: 2    Date Filed: 03/14/2023 Entry ID: 5254658

On April 25, 2018, Garcia-Pascual appeared before an immigration judge (IJ) and testified in support of his application for cancellation of removal. The only issue at the hearing was whether Garcia-Pascual could demonstrate the requisite hardship.[1] *See* 8 U.S.C. § 1229b(b)(1)(D) (providing that the alien must "establish[] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence"). Garcia-Pascual testified that although he had just married Vazquez, they had been together for 11 years. He explained that his stepson Bryan had no relationship with his biological father; Garcia-Pascual had assumed the role of father to Bryan. Bryan was "do[ing] well" in the fifth grade. Add. at 6. According to Garcia-Pascual, his biological son Saul was "do[ing] well in [pre]school." *Id.* Garcia-Pascual testified to having "a very close relationship with his children," being "involved in his children's educational activities," and "help[ing] out at school events." *Id.*

Garcia-Pascual explained that if he were removed to Mexico, Vazquez and the children would remain in the United States. "He stated that it would be very difficult on his children to be raised without a father." *Id.* at 7. Garcia-Pascual had started his own business as a contractor two years prior. By contrast, Vazquez had not worked since 2011, when she worked cleaning office buildings. Garcia-Pascual "did not believe that [Vazquez] would be able to financially support the children without his financial assistance" if he were removed to Mexico. *Id.* He believed that his removal to Mexico also "would negatively affect the children's academics." *Id.*

In her testimony before the IJ, Vazquez testified that she did not graduate from high school in Mexico, was 16 years old when she came to the United States, and never attended high school in the United States. She claimed to have last worked in

---

[1]DHS informed the IJ that DHS had no concerns with Garcia-Pascual's good moral character or continuous physical presence. *See* 8 U.S.C. § 1229b(b)(1).

2012 cleaning office buildings, earning $500 per week. Vazquez was taking classes to learn English and taking GED classes. Vazquez reiterated that Bryan does not have any relationship with his biological father and had not had any contact with him since 2006, when he was three-months-old. According to Vazquez, "Bryan [had] just learned last month that [Garcia-Pascual] is not his biological father." *Id.* She testified that her relationship with Bryan's father was "very difficult" and that he had physically abused her during the marriage. *Id.* According to Vazquez, she left Bryan's father because the violence was affecting Bryan.

Vazquez reiterated that both Bryan and Saul are "excellent student[s]." *Id.* at 8. She explained that she and the children "would remain in the United States if [Garcia-Pascual] returned to Mexico. She believed that it would be difficult for her to support her children without her husband's financial support." *Id.* She believed that Garcia-Pascual's removal proceedings were affecting Bryan's "relationship with his friends at school" and that he was spending time alone. *Id.* She testified "that it would be very difficult emotionally on the children if they were separated from their father." *Id.* Moving to Mexico with the children "would be very difficult for them educationally," Vazquez stated, because "there are not many educational opportunities in the area of Mexico where they would live." *Id.* Vazquez could not live with her parents in Mexico because they are older and live in a "small home" with her grandparents. *Id.*

The IJ found that "both [Garcia-Pascual and Vazquez] testified credibly." *Id.* The IJ then assessed whether Garcia-Pascual had proven his eligibility for cancellation of removal under Section 240A(b)(1) of the INA. After finding that Garcia-Pascual established his continuous physical presence, good moral character, and lack of any disqualifying convictions, the IJ analyzed whether Garcia-Pascual sustained his burden of proving an exceptionally and extremely unusual hardship. *See* 8 U.S.C. § 1229b(b)(1). The IJ concluded that "the hardships presented by [Garcia-Pascual] are not substantially different from those that would normally be expected

-4-

upon the separation of a parent from his children." *Id.* at 10. In reaching this conclusion, the IJ "considered the ages, health, and circumstances of [Garcia-Pascual's] children." *Id.* The IJ noted that the children would remain in the United States with Vazquez and that they "are doing well in school and are healthy." *Id.* at 11. The IJ also "considered the emotional and financial hardship on [Garcia-Pascual's] children if [he] returned to Mexico." *Id.*

The IJ observed that "separation from a family member . . . do[es] not constitute extreme hardship." *Id.* (alterations in original) (quoting *Matter of Pilch*, 21 I&N Dec. 627, 631 (BIA 1996)). This is because "[s]eparation from close family members is a hardship that would normally be expected from the removal of any respondent with spouses, parents, or children in the United States." *Id.* For this reason, the IJ explained, "[t]he Board has long[]held that the potential of family separation alone is not sufficient to demonstrate the requisite hardship in the context of suspension of deportation much less the higher standard applicable for cancellation of removal applications." *Id.* (citing *Matter of Ige*, 20 I&N Dec. 880, 885 (BIA 1994)). The IJ found no evidence indicating that "the emotional hardship his children would experience is 'substantially different from, or beyond, that which would normally be expected from the deportation of an alien with close family [members] here.'" *Id.* (quoting *Matter of Monreal*, 23 I&N Dec. 56, 65 (BIA 2001)). The IJ did acknowledge the "unique" and "uncommon" situation presented in Garcia-Pascual's case of "Bryan just learn[ing] that [Garcia-Pascual] is not his biological father." *Id.* But the IJ "d[id] not find that the emotional hardship to [Garcia-Pascual's] children rises to the level of exceptional and extremely unusual." *Id.*

The IJ also "considered the financial and educational hardships on [Garcia-Pascual's] children if [he] returned to Mexico." *Id.* The IJ acknowledged "that it would be difficult for [Garcia-Pascual's] wife to support her children and provide the same lifestyle they currently enjoy." *Id.* Nonetheless, "this type of financial hardship," the IJ reasoned, "is not unexpected when the principal family breadwinner is

-5-

separated from his family." *Id.* The IJ did acknowledge the "financial challenges" Garcia-Pascual's family would face by "losing [his] financial contributions" but noted the Board's prior holding "that the economic loss that a qualifying relative would suffer due to a parent's return to their native country is insufficient to establish exceptional and extremely unusual hardship." *Id.* at 11–12 (citing *Matter of Andazola*, 23 I&N Dec. 319, 323 (BIA 2002)). As to the children's education, they "would continue attending the schools in Wichita that they currently attend. Thus, their education would not be so severely impacted by their father's return to Mexico to create an exceptional and extremely unusual hardship." *Id.* at 12.

"In sum," the IJ explained, "the hardships presented by [Garcia-Pascual] are not substantially different from, or beyond, that which would normally be expected from the deportation of an alien who has resided for a long period of time and has close family members in the United States." *Id.* The IJ found that Garcia-Pascual failed to "present any evidence to show that his children have any particular health problems or that there are any other unusual factors that might make it an exceptional and extremely unusual hardship for his children if he returns to Mexico." *Id.* In reaching this conclusion, the IJ "considered all of the hardships presented by [Garcia-Pascual] individually and in the aggregate in determining that he has failed to carry his burden of proof of establishing exceptional and extremely unusual hardship to his qualifying relatives." *Id.* Garcia-Pascual's case failed to "rise to [the] high threshold that Congress set with the 'intent to substantially narrow the class of aliens who would qualify for relief.'" *Id.* (quoting *Matter of Recinas*, 23 I&N Dec. 467, 470 (BIA 2002)). The IJ denied Garcia-Pascual's application for cancellation of removal.[2] But the IJ did state that had Garcia-Pascual "establish[ed] the four statutory elements require[d] for a grant of cancellation of removal, the Court would grant [Garcia-Pascual's] application in the exercise of discretion." *Id.*

---

[2]The IJ did grant Garcia-Pascual "sixty (60) days of voluntary departure in the exercise of discretion." *Id.*

Garcia-Pascual timely appealed the IJ's decision to the Board. Garcia-Pascual argued that the IJ erred in (1) discounting the hardship that his stepson Bryan would face if Garcia-Pascual were removed to Mexico, and (2) finding that Garcia-Pascual failed to demonstrate the requisite hardship under existing case law. The Board affirmed, without opinion, the IJ's decision.

The instant petition for review followed.

## II. *Discussion*

In his petition, Garcia-Pascual argues that the IJ erred as a matter of law in denying his application for cancellation of removal based on the IJ's conclusion that the harm Garcia-Pascual's children will suffer upon his removal is not "exceptional and extremely unusual." Petitioner's Br. at 7.

The government responds that this court should dismiss the petition because it "lacks jurisdiction to review the agency's discretionary determination that . . . Garcia-Pascual failed to demonstrate that his qualifying relatives would suffer exceptional and extremely unusual hardship and, therefore, he failed to demonstrate eligibility for cancellation of removal." Respondent's Br. at 13. The government notes that this court has jurisdiction to consider only "questions of law and constitutional claims." *Id.* It contends that Garcia-Pascual has styled his claims as "legal" when they are actually "requests for the [c]ourt to reweigh the hardship factors properly considered by the agency." *Id.* As a result, the government maintains that the claims "do not constitute colorable legal questions subject to the [c]ourt's jurisdiction." *Id.*

"When[, as here,] the B[oard] affirms without opinion, the IJ's decision is the final agency action for purposes of judicial review." *Abdelwase v. Gonzales*, 496 F.3d 904, 906 (8th Cir. 2007). "We review constitutional claims and questions of law de novo. We review factual determinations under the substantial evidence standard,

-7-

reversing only if the evidence is so compelling that no reasonable factfinder could fail to find in favor of the petitioner." *Gilbertson v. Garland*, 7 F.4th 700, 704 (8th Cir. 2021) (cleaned up).

"Aliens in removal proceedings may, under certain enumerated circumstances, be eligible for a discretionary form of relief called cancellation of removal." *Hernandez v. Garland*, 28 F.4th 917, 920 (8th Cir. 2022) (internal quotation marks omitted). To qualify for cancellation of removal, an alien must prove the following: "(1) continuous physical presence in the United States for at least 10 years; (2) good moral character; (3) he has not been convicted of certain crimes; and (4) his 'removal would result in exceptional and extremely unusual hardship' to a qualifying relative." *Id.* (quoting 8 U.S.C. § 1229b(b)(1)(D)).

"Congress has sharply circumscribed judicial review of the discretionary-relief process." *Patel v. Garland*, 142 S. Ct. 1614, 1619 (2022). "Section 1252(a)(2)(B)(i) of the Immigration and Nationality Act states: 'Notwithstanding any other provisions of law . . . no court shall have jurisdiction to review any judgment regarding the granting of [cancellation of removal] relief under section . . . 1229b.'" *Solis v. Holder*, 647 F.3d 831, 832 (8th Cir. 2011) (alterations in original). In § 1252(a)(2)(B)(i), "'judgment' means any authoritative decision. Under this broad definition, § 1252(a)(2)(B)(i)'s prohibition encompasses any and all decisions relating to the granting or denying of discretionary relief. Factual findings fall within this category . . . so the courts lack jurisdiction to review them." *Patel*, 142 S. Ct. at 1621 (cleaned up). Specifically, "'any' means that the provision applies to judgments '"of whatever kind"' under § 1255, not just discretionary judgments or the last-in-time judgment." *Id.* at 1622 (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)). In addition, "§ 1252(a)(2)(B)(i) encompasses not just 'the granting of relief' but also any judgment *relating to* the granting of relief. That plainly includes factual findings." *Id.* (emphasis in original). Thus, "[f]ederal courts lack jurisdiction to review facts found

Appellate Case: 20-2529   Page: 8   Date Filed: 03/14/2023 Entry ID: 5254658

as part of discretionary-relief proceedings under . . . the . . . provisions enumerated in § 1252(a)(2)(B)(i).” *Id.* at 1627.

"Even so, this court has jurisdiction of 'constitutional claims or questions of law raised upon a petition for review.'" *Solis*, 647 F.3d at 832 (quoting 8 U.S.C. § 1252(a)(2)(D)). Further, the Supreme Court has made clear that we have jurisdiction to review certain mixed questions of law and fact. *See Guerrero-Lasprilla v. Barr*, 140 S. Ct. 1062 (2020). In *Guerrero-Lasprilla*, the Supreme Court held that "subparagraph (C)—which bars review of 'any final order of removal against an alien who is removable by reason of having committed' certain criminal offenses—[did not] prohibit[] review of how a legal standard applies to undisputed facts." *Patel*, 142 S. Ct. at 1623 (citing *Guerrero-Lasprilla*, 140 S. Ct. at 1067–69). The holding turned on the Court's determination that "such an application counts as a question of law for purposes of subparagraph (D)." *Id.* (citing *Guerrero-Lasprilla*, 140 S. Ct. at 1067–69).

In summary, "*Patel* makes clear that the [Board's] determination that a citizen would face exceptional and extremely unusual hardship is an authoritative decision which falls within the scope of § 1252(a)(2)(B)(i) and is beyond our review." *Castillo-Gutierrez v. Garland*, 43 F.4th 477, 481 (5th Cir. 2022) (per curiam). Nevertheless, "a petitioner can raise a question of law under § 1252(a)(2)(D) in two ways: (1) by advancing a statutory-construction argument, or (2) by disputing the application of a legal standard to undisputed or established facts." *Galeano-Romero v. Barr*, 968 F.3d 1176, 1182 (10th Cir. 2020) (cleaned up). But we have cautioned that "[p]etitions for review sometimes try to cloak challenges to discretionary determinations in constitutional or legal garb." *Garcia-Ortiz v. Garland*, 20 F.4th 1212, 1215 (8th Cir. 2021) (internal quotation marks omitted); *see also Gonzalez-Rivas v. Garland*, 53 F.4th 1129, 1131 (8th Cir. 2022) ("To invoke our jurisdiction, Gonzalez-Rivas frames his issues as constitutional or legal errors.").

"In evaluating whether a petition raises a constitutional claim or question of law, we look to the 'nature of the argument advanced in the petition.'" *Mohamed v. Garland*, 44 F.4th 761, 771 (8th Cir. 2022) (quoting *Sharif v. Barr*, 965 F.3d 612, 619 (8th Cir. 2020)). For example, in *Garcia-Torres v. Holder*, the petitioner alleged that "(1) the Agency failed to cognize the hardship caused by [p]etitioner's son being completely unable to see his mother if [p]etitioner were removed; and (2) the Agency considered the other hardships presented only individually, rather than cumulatively." 660 F.3d 333, 338 (8th Cir. 2011) (cleaned up). As to the second allegation, the petitioner attempted to circumvent the jurisdictional bar by arguing that the Board "did not make a mere mistake in balancing the evidence; rather, the Agency applied an incorrect legal standard by failing to account for the cumulative effect of the hardships presented." *Id.* (internal quotation marks omitted). We held that we "lack[ed] jurisdiction to review the [Board's] hardship determination because, while [p]etitioner attempt[ed] to present his issues as questions of law, the hardship determination actually constitutes a discretionary decision barred from appellate review." *Id.*[3]

---

[3]*See also Salas-Caballero v. Lynch*, 786 F.3d 1077, 1078 (8th Cir. 2015) (per curiam) (holding that petitioner's argument that the Board "committed an error of law by improperly applying its prior decisions in analyzing whether his United States citizen son would suffer exceptional and extremely unusual hardship if [the petitioner] were removed" was actually a challenge to the Board's discretionary determination that the court lacked jurisdiction to review); *Tejado v. Holder*, 776 F.3d 965, 969 (8th Cir. 2015) (per curiam) (holding that the court lacked jurisdiction to consider the petitioner's arguments "(1) that the IJ did not consider his son's psychological condition during a previous separation, and (2) that the IJ erred in categorizing the hardship that his family would face as 'normal' because of a misapplication of [Board] precedent"); *Hernandez-Garcia v. Holder*, 765 F.3d 815, 815 (8th Cir. 2014) (holding the court "lack[ed] jurisdiction to consider" the petitioner's "argu[ment] that the [Board] committed an error of law when it 'failed to follow its own precedent' in deciding the hardship issue"); *Hamilton v. Holder*, 680 F.3d 1024, 1027 (8th Cir. 2012) (rejecting petitioner's "argu[ment] that the IJ and the [Board] applied the wrong legal standard in concluding that [the petitioner] had failed to show 'extreme hardship' by employing a 'particular circumstances test' instead of

-10-

Here, Garcia-Pascual "*attempts* to raise a question of law under § 1252(a)(2)(D)." *Galeano-Romero*, 968 F.3d at 1182 (emphasis added). First, Garcia-Pascual asserts that the IJ erred "by failing to conduct an aggregate, cumulative analysis of the hardship factors." Petitioner's Br. at 7. Second, Garcia-Pascual argues that the IJ erred in concluding that the emotional hardship that Bryan experienced from recently learning that Garcia-Pascual was not his biological father failed to meet the legal standard. Garcia-Pascual cites the IJ's finding that "the situation was 'unique'" and contends that "unique" is "a synonym for 'unusual.'" *Id.* Garcia-Pascual asserts that in light of "the IJ's explicit statement that he was denying relief as a matter of law and would, otherwise, grant cancellation of removal as a matter of discretion, th[is] [c]ourt has jurisdiction to review the decision." *Id.*

With regard to Garcia-Pascual's first argument, we have already rejected an attempt to circumvent the jurisdictional bar by arguing that the Board "applied an incorrect legal standard by failing to account for the cumulative effect of the hardships presented." *Garcia-Torres*, 660 F.3d at 338. Garcia-Pascual's second argument that the IJ legally erred in finding that the hardships that Bryan would suffer were not exceptional and extremely unusual despite Bryan's "unique" situation of recently learning that Garcia-Pascual was not his father also fails. "Even after *Guerrero-Lasprilla*, the [Board's] discretionary conclusion that the hardship to the children is not substantially beyond that typically caused by an alien's removal 'is precisely the discretionary determination that Congress shielded from our review.'" *Gonzalez-Rivas*, 53 F.4th at 1132 (quoting *Rodriguez v. Barr*, 952 F.3d 984, 990 (8th Cir. 2020)). We conclude that Garcia-Pascual's argument is actually an "argument

---

evaluating the totality of the circumstances" because the argument was "really a challenge to the way in which the [Board] weighed the relevant factors" for which the court lacked jurisdiction to review); *Solis v. Holder*, 647 F.3d 831, 833 (8th Cir. 2011) (holding that the petitioner's argument "that the [Board] applied the incorrect legal standard by failing to adequately consider certain factors that the [Board] has considered relevant in other decisions" was actually a challenge to the Board's discretionary determination that the court lacked jurisdiction to review).

-11-

Appellate Case: 20-2529     Page: 11     Date Filed: 03/14/2023 Entry ID: 5254658

. . . that the [IJ] erred in failing to afford what he believes is sufficient weight to Bryan's emotional hardship in rendering the hardship determination." Respondent's Br. at 28. A petitioner's argument "that the [Board] applied the incorrect legal standard by failing to adequately consider certain factors" is actually a challenge to the Board's discretionary determination that we lack jurisdiction to review. *Solis*, 647 F.3d at 833.

### III. *Conclusion*

Accordingly, we dismiss the petition for lack of jurisdiction.

ARNOLD, Circuit Judge, concurring.

I concur in the judgment because our precedents require it but write separately to indicate why I think those precedents need further consideration.

The court identifies two arguments that Garcia-Pascual makes: that the agency erred by evaluating the hardship considerations in isolation instead of cumulatively, and by concluding that Garcia-Pascual had failed to show that his son would suffer exceptional and extremely unusual hardship should Garcia-Pascual be removed to Mexico. The first argument is a legal one: It raises a question about whether the agency applied the governing legal standard in reaching its conclusion. But, as the court notes, we held otherwise in *Garcia-Torres*, concluding that this argument actually raised a factual issue and that the petitioner had simply "cloaked" his "argument in constitutional or legal garb" to circumvent the jurisdictional bar. This approach gives me some pause. It seems wrong to usher a litigant to a door he's not looking for only to tell him that the door is closed. I would instead "look to the nature of the argument advanced in the petition," as the court says in a different part of its opinion, and the argument advanced there is a legal one. Petitioners are the masters of their petitions.

-12-

As for whether Garcia-Pascual has failed to show that his son would suffer exceptional and extremely unusual hardship, I believe *Guerrero-Lasprilla* makes clear that we have jurisdiction to review this mixed question of law and fact. Garcia-Pascual maintains in a heading in his brief that "the agency erred as a matter of law in concluding the undisputed facts did not meet the legal standard for 'exceptional and extremely unusual hardship.'" That fits *Guerrero-Lasprilla* hand in glove. I agree with the court, though, that our recent decision in *Gonzalez-Rivas* requires us to dismiss the appeal of this issue for lack of jurisdiction. There we said that, even after *Guerrero-Lasprilla*, "the BIA's discretionary conclusion that the hardship to the children is not substantially beyond that typically caused by an alien's removal is precisely the discretionary determination that Congress shielded from our review." 53 F.4th at 1132. I am skeptical of this conclusion because I don't think that the fact that the relevant determination is a discretionary one provides an adequate basis for holding that we have no jurisdiction to review it. The governing statute, in fact, specifically allows us to consider constitutional questions and questions of law, even when a decision is a discretionary one. *See* 8 U.S.C. § 1252(a)(2)(B), (D). And *Guerrero-Lasprilla* clarified that questions of law include mixed questions of law and fact.

In sum, though precedents require us to dismiss the petition for lack of jurisdiction, I suggest those precedents deserve another look.

_____

Appellate Case: 20-2529     Page: 13     Date Filed: 03/14/2023     Entry ID: 5254658